Good morning. May it please the court. I'd like to reserve two minutes for rebuttal. My name is Carl Kruth. I'm appearing for Appellant Malik Njai. This is an appeal from an order denying writ of error quorum novus before the Federal District Court for the District of Arizona, and the standard of review is de novo. There's three independent claims in this case. The first is a violation of Rule 11 for lack of a factual basis. The second and third are both claims of ineffective assistance of counsel in violation of the Sixth Amendment. The first claim, violation of Rule 11, is based on the court's acceptance of a plea without a factual basis. And I'd like to ask the court to turn its attention to excerpts of record, page 49, on which the court accepted the change of plea on the basis of the defendant's admission of an I-9 violation. In no place in the record does the defendant ever admit a claim, a false claim, of U.S. citizenship, which is essential under a case that was decided two years later, United States v. Caraone. Now, if the principles of retroactivity under Boozley and that United States jurisprudence which follows, the retroactivity alone should allow this court to render a decision without any further argument. I submit that the transcript of the change of plea alone would be enough if the principles of retroactivity apply. Now, Caraone was a substantive criminal decision. It was not a procedural decision. That is the only distinction in Boozley for failure to apply a decision retroactively. In Boozley, it was a writ of habeas corpus under 2255. I submit that the matter on which a 2255 petition may be submitted is the same as the standard for submission of a claim on writ of error under Coram nobis. Q. Counsel, why isn't there an undue delay here? A. Your Honor, we have a pending motion for judicial notice, for judicial notice specifically of the immigration record in this matter. Now ---- Q. My understanding is that the government didn't oppose the introduction of actual immigration documents. Is that correct? But the concern was about the website and some other things that were asked to be ---- A. Your Honor, that is the most recent objection by the government. It's interesting because in their reply brief, they indicated that they would not oppose the motion for judicial notice of the website at all. So I'm ---- Q. We'll ask them about that point, but with respect to the immigration proceedings. A. Your Honor, Gerald Burns, who's appellant's immigration attorney and who filed a petition for immigrant visa under the Violence Against Women Act, a petition which has since been approved, he made an affidavit which is a matter of record before the immigration court. And that affidavit states ---- Q. You said that the affidavit was never approved? A. It has, Your Honor. Q. Is that in the record? A. It is, and it was in the record before the district court because it was approved during litigation of this matter before the federal district court. And for some reason, they just omitted that issue in their decision, perhaps because it would have turned the course. Well, Your Honor, unfortunately, it's not. We have a situation in which the inadmissibility of the defendant turns on the conviction under 9-11, and we received an immigrant visa petition approval. Unfortunately, an immigrant visa petition is only as good as the adjustment application that it supports. Q. So in other words, you still need, in your view, to have the excising of this colloquy, the Rule 11 proceedings, so that you don't have this underlying admission? A. That's part of it, Your Honor. It's a confusing issue, perhaps, because the ---- paradigm here is that the immigration judge decided that initially, and this has been reopened since then, but initially the immigration judge decided the removal order on the basis of a 9-11 conviction in conjunction with the I-9 form. That is, the conviction alone did not rise to enough, according to the immigration judge's analysis, for a removal order, and that the I-9 form was necessary to confirm that it was for a benefit under the Immigration and Nationality Act. Q. And now let's stop there. You also said that there is pending or has been granted a motion to reopen on that point? A. Yes, Your Honor. The Board of Immigration Appeals approved, I should say granted, a motion to reopen, and that motion to reopen led to the remand of the immigration record to the immigration judge. Now, it's interesting, again, because the Office of District Counsel, who is the immigration prosecutor, indicated that they would be moving to terminate before the immigration court. But now that it is before the immigration court, they have taken a contrary position. Q. So let's stop again to try to figure out where the Ninth Circuit fits in this procedural tangle. If this issue of the 9-11 conviction in the I-9 form is back now in front of the immigration judge, should our proceedings be suspended pending the completion of that immigration proceeding? A. They could be, Your Honor. And that is a position that may assist you. However, I think that the ---- Q. I don't want to assist myself or the court. What we're trying to figure out is when we have these interlocking proceedings, some things are down and some things are up, sometimes we ---- a decision by us is not going to be made in the immigration proceeding. So my question on listening to this is why we wouldn't hold the ---- your petition in abeyance pending the outcome of the determination in the immigration court. A. Well, there's two reasons I can think of offhand. One is the standard for honor writ of ericorum nobis for the defendant to show that he would ---- and the appellant in this case to show that he would be subject to a removal order. Instead, it only requires that he show under Kwan, which I believe Judge Fletcher wrote, that there have been a meritorious motion that the defendant and the appellant in this case could have made that he would be subject to a removal order. And that would have had a strong possibility of success before the district court. Q. I guess on this ---- A. Yes. Q. I'd like your help. A. Please. Q. You indicated in the briefs that the primary motion that you wanted to make or were concluded to make was for relief under the Ballots Against Women Act. And I understood that to be at least a central to your argument. But now you've actually succeeded on that basis. So what's left that this proceeding would allow you to do that you can't or haven't already otherwise done? A. I'd like to answer that as clearly as I can by suggesting a couple of different responses. One, there is an issue of ineffective assistance of counsel in this case. And one of those claims is based directly on counsel's failure to apprise his client that he could only be convicted of one of the two counts. Q. How does it assist you? A. How does it assist us? Because under the Ortiz decision, which is an unpublished decision out of the District of Arizona, a violation and a 9-11 violation are multiplicitous, which means it's double jeopardy. You can't be convicted of both. And in Ortiz, defense counsel made a motion for dismissal of one of the two counts and succeeded. Q. Because I'm still just not, I may be missing something here, but you wanted relief under the Ballot, but you've gotten relief under the Ballot. A. I understand. Q. So in here, what's the difference? A. And I think this goes back to the point that you were making earlier, and I appreciate your recitation of the question, because it is an important one. Appellant's counsel in this matter, before the district court, told him and told the district court judge that he was not going to be denied an adjustment on the basis of the Violence Against Women Act. That's different than an approval of an immigrant visa petition. The immigrant visa petition is only the first step. Counsel said the 9-11 conviction will not deter you from this form of relief. And lo and behold, that is specifically what he's being deterred from doing. He cannot establish inadmissibility because his conviction in conjunction with the I-9 violation is sacrosanct, and he cannot overcome that. Now, on the other hand, if the 9-11 count had been dismissed on a competent motion of his counsel, the U.S. attorney would have been left with the 1546 count alone. Q. What is the immigration court determining now on its motion to reopen? What will be the result? Let's say you had an ideal world in the immigration court. A. Yes. Q. And you got everything you wanted. What would that be? A. He would be adjusted before the immigration judge. Q. Okay. And if he were adjusted before the immigration judge, then you would take that and glue together the VAWA, and he would be in good situation? A. He would have a green card, Your Honor. Q. He would have a green card. A. Yes. Q. Interesting fact, that this individual would have had a green card at the time that this matter was charged originally. A. You know, we are a lot of years in water under the bridge. We're just trying to figure out. So if you are successful in the immigration court and he obtains his adjustment, he then obtains his green card, and you then, albeit late, have restored him to a legal status, correct? A. Yes, Your Honor. Q. And is there anything else that he could get from this court if all that came to pass? A. Your Honor, the ---- Q. The answer to that question has to be yes or no, and then you can explain. A. There is an ongoing prejudice to him in that he would not have the opportunity to travel abroad because the standard of inadmissibility is applicable to a lawful permanent resident with a green card who travels abroad. So while he would have a benefit to a certain extent if the immigration court did grant the green card, he would have an outstanding prejudice against him because he would be stuck in the United States. He would not be able to travel abroad. Q. And the reason for that is because he would still have an inadmissibility finding that hadn't been wiped off the books? A. Well, he would have an inadmissibility ground to which he would be subject every time that he traveled abroad. And that issue was addressed before the district court in a case called QIAO, which is Q-I-A-O, and it's in the unpublished decision that is in our materials that we submitted in conjunction with the opening brief. And I believe that that shows specifically that a lawful permanent resident that is returning from abroad is subject to the same standard of inadmissibility. In that case, which was also a petition for writ of ericorum nobis, the lawful permanent resident had issues in establishing grounds for relief. And it's interesting because he is subject to the same standard as Malajai the appellant in this case, in that the inadmissibility standard and the relief that each of them would have to establish grounds for is the same. And that's an issue that I'm sure a U.S. attorney will be bringing to your attention. I'm sorry, Judge Fletcher. Yes. I have before me a February 9, 2008 order entered by the BIA, and is what I'd like to read it to the court. This may possibly shed a little light on things, or it may not. The respondent who is from Gambia has filed a motion to reopen. In not opposing the motion, the BIA urges the board to remand proceedings to the immigration court, where the DHS will move to terminate proceedings without prejudice, so that the respondent can seek adjustment of status before the DHS. The order, the respondent's unopposed motion is granted, and the file is remanded to the immigration court for further proceedings. Now, number one, have there been further proceedings before the DHS? There have, Your Honor. No? Yes, yes, there have. Yes. And what's the result of that? The Office of Chief Counsel, which is the immigration prosecutor, has taken a contrary position to that expressed in their non-opposition, and they are now refusing to move to terminate before the DHS. For what reason? Your Honor, I cannot say with any certainty. However, the former what we call district counsel at the Office of Chief Counsel has since been elevated to a position at the Executive Office of Immigration Review. She's now an immigration judge, and her position is that she has taken a position in kind with his. Do you have any estimate as to when this first round of the proceedings will be concluded in the immigration court? Your Honor, it's calendared for January of 2009. No, excuse me, Your Honor, that's a mistake. It's a year from now. It's a year from now. There is a status conference that has been moved for by his immigration counsel, Gerald Burns. However, there's no certainty that that status conference is going to be granted, and that status conference is on the basis of the same conflict of interest, because, again. Well, we're not going to get into the merits of the immigration proceeding here. We're just asking you to consider procedurally where it stands. I can't hear you. Is the basis for the current opposition the fact of the conviction? Your Honor, I can't say they knew about the conviction from the outset. They've known about the conviction since its original disposition six years ago. I can only suggest to the court that there has been a change in position since its original disposition. On account of the relationship between, again, my worthy adversary and his spouse. Don't go into that. So you don't know whether our action here would have any effect on what's going on in the immigration court or not? I can tell you that it would have a direct effect on what's happening in the immigration court, because a conviction of 9-11 in concert with an I-9 violation makes it impossible for the defendant and the appellant in this case, the respondent in the immigration matter, to defend against the charges in the notice to appear. If instead the appellant had been convicted of 18 9-11, which was the alternate charge, which was ultimately dismissed. I think we understand that, counsel. Okay. The only thing I wanted to bring to your attention was that it would really improve his defense before the immigration court, had he not been convicted of 9-11. And the lack of a factual basis is a claim that is independent of ineffective assessment. I believe that, albeit some diligent issues aside, it is an extremely strong claim, and the ineffective assistance of counsel claims only improve equities here. This individual never claimed U.S. citizenship, even in the one unremarkable instance of where an INS investigation took place. Well, going back to where Judge Gorsuch began the inquiry, that had to do with a delay issue, a more recent delay, because it seemed that by mid-2004, he had an attorney who understood the problems associated with this difficulty with his conviction. He was ineligible for the opinion in Caruni, which, you know, he says is factors into the timing of his conviction. So if you had all that on the table in 2004, why did it take a couple of years before we get the petition? Well, Your Honor, Judge McKeown, I think that, first, we have an issue that he was already filing a petition, and I think that the immigration court proceedings at the outset were concluded. And he had, if I'm not incorrect, already filed his moving papers before the Board of Immigration Appeals at the time that... This isn't a question. This is his petition quorum nobis. Right. And we're trying to figure out whether there is a time delay that's not justified should the petition be available to him. And so his board proceedings seem irrelevant to a decision then to go ahead and file once everything's on the table and, you know, his difficult situation is basically known and the parameters of it are known, both to him and his attorney. And they may be, Judge McKeown. I wonder, however, whether Judge Fletcher's decision in Kwan comes to bear on this issue, because in Kwan, we had diligence factoring in the immigration proceedings. And in Kwan, where a foreign national who was in proceedings on the basis of a belief in the correct or alleged correct advice of his former counsel. That is, the successes before the immigration court gave him some sense of responsibility. Thank you. Thank you, Your Honor. Thank you. Thank you. Good morning. Good morning, Your Honor, and may it please the Court. My name is Jim Knapp. I represent the United States in this matter. And as the Court knows, this is a review of a denial of a quorum nobis petition, so the standard of review is de novo. But that standard of review doesn't tell the whole story. Quorum nobis is supposed to be an extraordinary remedy used only in rare circumstances, compelling circumstances to achieve justice. As I've argued in my briefs, there are three reasons why the defendant hasn't shown that this particular case warrants the issuance of the writ. I want to, though, initially address a couple of things. The factual basis issue of the alleged Rule 11 deficiency, the Court could read the transcript for itself. There is a mention of the claim of United States citizenship. Obviously, the charge itself is for false claim of United States citizenship to which he pleaded guilty. Also, the factual basis in the plea agreement, which are included in the supplemental excerpts of record, clearly state the factual basis for a conviction for 18 United States Code, Section 9-11. On the judicial notice issue, if I may grab my response brief. I want to actually read what I wrote. The defendant asked for judicial notice of he specifically mentioned his reopening of his immigration proceedings, and he included in his addendum, along with his opening brief, a copy of the order reopening those proceedings. That was the only document relating to the ongoing activity in his immigration proceedings that he included with his papers. And in my brief, I stated the United States does not oppose the defendant's request for judicial notice of recent activity in his immigration proceedings, but disputes that this activity has any bearing on whether he has shown valid reasons for delay. I stand by that. I still have no objection to the Court taking judicial notice of the fact that his proceedings have been reopened, but of course taking judicial notice of the entire contents, the shifting contents of his website, including affidavits prepared after the briefs in this case were submitted. I do oppose, as I've articulated in my response. Just to be clear, you have no objection to actual documents and filings with the Immigration Court? I have no objection to them. Judicial notice of official filings. I have no objection to them to the extent that they're being shown to show that things have been filed with the Immigration Court. I do object to the contents of them to the extent they're, you know, used for the truth of the matters asserted in there, because obviously the defense's website contains a lot of exhibits, affidavits, all manner of things that aren't normally taken into or aren't normally appropriate for judicial notice. But if it's only to show that those were filed in the Immigration Court, I have no objection to that. I think we have your position. Now, the first issue, as I see it, is this issue of valid reasons for delay. What distinguishes this case from Kwan is that, number one, the attorney in this case, the prior lawyer who's allegedly ineffective, he advised, and he says this in his affidavit that defendants submitted with his petition, that defendants submitted with his petition. He advised defendants that the chances for deportation were high. He advised defendants of this on the day of the change of plea hearing. Yes, but counsel, he advised them on the basis that you're being convicted of something bad and therefore, of course, your immigration chances are going to be affected. And as you point out, of course, he was here illegally to begin with. But that's not the prejudice that's being claimed here. The prejudice that's being claimed here is specific to 9-11 and the features associated with that conviction as opposed to a different kind of conviction. So it seems to me all those kind of arguments about the fact that he was here illegally and the fact that being convicted of something doesn't enhance your chances of staying in this country are irrelevant. Am I wrong about that? No, Your Honor. I don't think you're wrong. But I do think that this is a difference between this case and Kwan. What the defendant is stating in his affidavit and also in the affidavit from counsel is that he was told that the conviction wouldn't interfere with the plea agreement wouldn't interfere apparently with his pursuit of benefits under his Violence Against Women Act. As the Court noted, he got the visa petition. He announces that that isn't enough because he needs to actually ---- A very different line of argument, though, to say that counsel represented whether or not he ---- 9-11 might hurt him, the conviction, as opposed to saying some conviction is going to hurt him. Those strike me as two very different things for purposes of assessing whether he was on notice of the problem that he's claiming now. Well, and I assert, Your Honor, I submit that he is on notice. He was on notice at the day of his change of plea, because, again, that's when his defense lawyer said his chances of deportation were high. That's when the district court said that he would likely be expelled from the United States. And when that's first found out by virtue of 9-11 as opposed to 1546? I don't know. Isn't that kind of important? Well, yes and no. As I've ---- It's ---- Actually, I would submit more no than yes. I reckon that. As I have argued in my third point, which is that there's no prejudice, the Fifth, the Eighth, and now even the Tenth Circuits have noted that someone can be found ineligible for adjustment of status based on the circumstances surrounding a former I-9 false attestation. Without a 9-11 conviction, without a 1546b3 conviction, without any sort of criminal conviction at all, just the circumstances can lead to ineligibility for adjustment of status. And that's why here the judge, the immigration judge, looked to the conviction and the circumstances laid out in the plea agreement because it was right there in front of him. It was easy. It was all under oath. It was judicially noticeable. He didn't have to hold an evidentiary hearing on the issue. But nevertheless, if the judge didn't have that, he still could find, and I submit it would be within his ability to find substantial, sufficient evidence to find defendant ineligible simply because he filled out this form I-9. And this also goes to defendants. So what – but even on that point, isn't that a fork in the road in terms of the decision process? In other words, if we're just looking at the conviction and that's all we had to look at and whether or not he really was rightfully advised that there is kind of two aspects, there's two different convictions going on here, the fact that the judge might have invoked the other doesn't really get him off the hook for what he did invoke, which was the conviction itself, and not simply the form and the fact that, you know, you might have a hearing and you might make a decision on the form depending on, you know, the explanation that's now been offered. So it seems that your fallback position doesn't answer the first inquiry, unless I'm missing something. No, Your Honor. You're not, but I, as you'd expect, view things a little differently on the first inquiry. Sure. And on the first inquiry, I submit that the difference in this case from Quan is on that first inquiry. The defendants did not receive encouragement from his criminal defense lawyer, who was allegedly ineffective, that he was certainly going to get relief or that he faced no hurdles. In Quan, the defense lawyer said that the defense lawyer said that it was a possibility that he could be deported, but not a realistic possibility. Here, the defense lawyer told the defendants that his chances for deportation were high. He had already been issued a notice to appear in immigration court on an outstanding charge for being a nonimmigrant visa overstay. He conceded that charge once he got into immigration court. There's no question that he was already deportable even before these, at the time these criminal decisions occurred. They couldn't overcome that aspect, correct? Maybe. It all depends on how things shake out in his pursuit for immigration relief to overcome his deportability. But the point is, there was no confusion about whether he was actually deportable, as opposed to in Quan, who is a lawful permanent resident, that was the confusion, is whether Quan was going to be deportable as a result of the conviction. Here. This is a little bit different than Quan, too, because in Quan, he didn't get the worst case advice, I guess. That was the problem. Here he gets the worst case advice, but it might not be accurate. In your right, I submit that the advice was accurate. I have argued in my brief that the advice wasn't effective. The defense attorney said that the conviction wouldn't interfere with his request for VAWA benefits. Of course, it didn't. He got the visa petition. Then there's a question of whether it still interferes with the adjustment of status. In this particular case, the immigration judge relied on the conviction because it was right there in front of him. But he didn't need to. And if there had been no conviction, if he had been acquitted at jury trial, the charges had never been brought, he could still be. Yeah, but counsel, that's, I mean, we're all beating around the same bush, but the difference is, at 9-11, you're, you know, as you just said, the immigration judge doesn't need to look any further. It's right there in front of him. As opposed to 1546, well, maybe, possibly, the immigration judge could have reached the same conclusion, but maybe, possibly, the immigration judge might not have.  One's, you know, the death penalty tomorrow, and the other is, well, maybe, maybe not. I don't know. Well, I see your point, Your Honor, but, again, I disagree. The 9-11 conviction itself did not. Disagree with what exactly? I disagree with that the 9-11 conviction was a death knell, sort of like the aggravated felony conviction in Quan or in Chau or in Cuota, the Second Circuit case that Quan relied on. Here, the 9-11 conviction didn't go far enough. That's why the immigration judge had to then look at the factual basis stated in the plea agreement, which is another way of just looking at the circumstances surrounding the conduct that led to both cases. Yes, but the point is the 9-11 conviction was based on the plea that he was advised, pursuant to bad advice, it seems, from counsel to take. And I don't concede that it was bad advice. That's what's being alleged, though. I know you don't concede that. I wouldn't reckon you concede anything in this case, but that's the allegation. And taking it seriously, as I have to do, the allegation is, if I hadn't been given the bad advice, maybe I would have had a 1546, and maybe I would have had all these arguments available to me. But the advice that I got was to take the 9-11 and give that plea and go through that colicle. And he – and defendant has no evidence in the record that his defense lawyer didn't pursue other options or didn't try to negotiate other options. He just says that it would be really nice if he could have got an alternative plea to 1546 and dismissal of 9-11. He doesn't show that that was even an option. There's nothing in the record to show that he could have had anything better than what he got. Now, I do want to point out a couple of the differences on this case and Quan. Defendant relies heavily on his so-called successes in immigration courts. I just want to note the timeline. Well, isn't that really what the proceeding would be about? Which proceeding, Your Honor? His Corm Nova proceeding. If he had – if he gets past the initial hurdles, then we would answer those questions that you've brought up. And then you'd have a hearing and you'd – maybe you'd be for not. I'm not sure I understand, Your Honor. I'm sorry. I don't think that – I mean, you're assuming that just by filing the petition that he gets everything that he wants, part of it is whether he can even file this petition given the delay and various other things. If we determine that it's an available remedy, doesn't he still have to prove up the factual predicate for a remedy, correct? Yes. But he's already submitted the evidence that he thinks satisfies that. The district court disagreed. But I think they're all appropriate for this Court's review, the valid reasons for delay. Right. And then also the ineffective assistance and the prejudice. Correct. I just want to note one other thing, too, because the Court was asking about the reopening. And, of course, I don't want to go into things that aren't in the record. But I will just note for the record that the immigration judge's decision from 2004 goes through the analysis of whether he's eligible for relief and finds he's not eligible for adjustment of status. So – Is that because of the 9-11 conviction? It's because of the – he looked at the conviction and then he also looked at the agreement. Which is basically saying that conviction for this particular petitioner. So now let's say if you didn't have that conviction, would we have a different ballgame, potentially? No. I would submit no. The defendant admitted to an INS investigator, and this is on page 65 of the excerpts of record, that his false attestation was as a citizen. There are cases from the Fifth, the Eighth, and the Tenth Circuits that have upheld immigration judge's decisions of ineligibility for adjustment of status based on a false claim of citizenship out of similar circumstances. So even without the conviction, I don't think we'd be facing a different situation. I thought he said he could claim he was a national but not a citizen. He's claiming that now, but there's no evidence in the record to support that. And, in fact, the record contradicts that. It's inconsistent with his confession. That's, again, noted on the excerpts of record, page 65. It's inconsistent with the plea colloquy where he admits that he made a false statement. That wouldn't be true if he had a good faith belief in nationality. He would just be innocent of all charges. It's also inconsistent with the immigration court where he admitted he was not a citizen or national on the first allegation of the NTA, the notice to appear, once he got into immigration court. That's on pages 81 and 88 of the supplemental excerpts. In essence, defendant is now asserting with no factual basis on appeal that he had a good faith belief in being a national. There's nothing in his affidavits that supports that, nothing anywhere else. And he's essentially asking this Court to provide him relief so that he can go back and try and convince the immigration judge that this was, in fact, true, when all the evidence directly contradicts it and shows that he was actually falsely claiming citizenship. Let me ask you the same question that I posed to Mr. Kruth, and that is, now that he's back in immigration court, should we hold this in abeyance pending whatever happens in immigration court? Because then you have – then you know what the alleged or potential prejudice or non-prejudice is at that point. I have no objection to that, Your Honor, although I would say that I think the Court can move forward on the merits, because, again, as I've argued in my brief, there are – there's the valid reasons for delay issue, which is separate from the inquiry whether this, you know, whether this issue, this advice is effective. And then also, as I've argued, the – it's the conduct and not the conviction that results in the problems in immigration court. Thank you. Thank you, Your Honor. We have one minute only. So watch your time, please. First of all, Your Honor, Judge McKeown, I'd like to respond perhaps very briefly about the holding it in abeyance again. I think there would be some loss of judicial resources in the Executive Office of Immigration Review. Well, we'll worry about judicial resources. You worry about compliance. Second, if there had not been – let me begin again. Please strike. Should counsel have acted competently and filed a motion for dismissal of the 9-11 charge on the basis that he had asserted to his client, the appellant, that he was competent in immigration, and he knew, a competent counsel would, that a 9-11 conviction would preclude his client's inadmissibility, despite the fact that he had asserted that it would not, he would have counseled his client to exercise his right to jury trial. Thank you. We appreciate the argument of both counsel in the briefing. It's a tangled, even more tangled than many immigration cases that we have. The case of United States v. Zhai is submitted, and we're adjourned for this morning. All rise.
judges: Fletcher, McKeown, Gorsuch